**HOROWITZ LAW GROUP, LLC**
Steven B. Horowitz, Esq.
P.O. Box 13
49 Route 202
Far Hills, New Jersey 07931
shorowitz@horowitzlawgroup.com
Attorneys for Plaintiff
—————————————————————x

| | |
|---|---|
| Manuel Morales, | **UNITED STATES DISTRICT COURT** |
| | **DISTRICT OF NEW JERSEY** |
| *Plaintiff,* | |
| v. | **VERIFIED COMPLAINT** |
| Temple Har Shalom, The Orchard Academy at Mountain Top Preschool, Mountain Top Preschool at Temple Har Shalom, Rabbi Randi Musnitsky, Joshua Greenbaum, Alex Hermes, Jonathan Wishnia, Gregg Paradise, Denise Adelman, Alexis Soled, Stephanie Green, Eric Mandelbaum, Rob Cohen, Karen Ehrenberg, Mark Ruderman, and John Does Number 1-20. | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

—————————————————————x

Plaintiff MANUEL MORALES, by and through his attorney, Steven B. Horowitz, Esq.,

alleges upon personal knowledge and his own acts, and upon information and belief as to all other

matters, as follows:

## INTRODUCTION

1. This action has been initiated by Manuel Morales (hereinafter referred to as "Plaintiff",

   unless indicated otherwise) against Temple Har Shalom, The Orchard Academy at Mountain

   Top Preschool, Mountain Top Preschool at Temple Har Shalom, Rabbi Randi Musnitsky,

   Joshua Greenbaum, Alex Hermes, Jonathan Wishnia, Karen Ehrenberg, Eric Mandlebaum,

   Rob Cohen, Denise Adelman, Alexis Soled, Stephanie Green, Mark Ruderman and John

Does 1-20 (hereinafter collectively referred to as "Defendants", unless indicated otherwise) for violations of the Fair Labor Standards Act of 1938, as amended 29 U.S.C., *et. seq.*), the New Jersey Wage and Hour Law (NJWHL) (N.J.S.A. 34:11-56a *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981- 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination (LAD) N.J.S.A. 10:5-1 *et. seq.*, The New Jersey Conscientious Employee Protection Act ("CEPA"-N.J. Stat. Ann. §§ 34:19-1 *et. seq.*), The Family and Medical Leave Act ("FMLA" 29 U.S.C. §§ 2601, *et. seq.*), Age Discrimination in Employment Act of 1967 ("ADEA" 29 U.S.C. 621 §§ *et. seq.*), the Americans with Disabilities Act of 1990 ("ADA"42 U.S.C. 12101 *et seq*, Fraudulent Filing of Returns (26 U.S.C. Section 7434 *et. seq.*), and other applicable law(s). As a direct consequence of Defendants unlawful actions, Plaintiff seeks damages as set forth herein.

## **JURISDICTION AND VENUE**

2.  This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § § 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. Any state claims herein or included would be proper under this Courts ancillary or supplemental jurisdiction to hear state claims arising out of the same common nucleus of operative facts as those set forth in Plaintiff's federal claims.

## **PARTIES**

3.  Plaintiff is an adult male residing at 204 Liberty Village Drive, Warren, New Jersey.

4.  Defendant, Temple Har Shalom (herein "Defendant THS" where referred to individually) is a non-profit corporation located at 104 Mount Horeb Road, Warren, New Jersey. Defendant THS is a synagogue and member of the Union for Reform Judaism. THS is engaged in

interstate commerce based on its YouTube Livestream of Services, promotion of Congregational Trips to Israel, Kol Nidre Appeals, and participation in Amazon Smiles, among other interactions.

5. Defendant the Orchard Academy at Mountain Top Preschool (herein "Defendant OA" where referred to individually) is a corporation doing business on the premises of Defendant THS.  The Administrators/Managers of Defendant OA oversaw the Plaintiff's working conditions and environment at all relevant times.

6. Defendant Mountain Top Preschool (hereinafter referred to as "MTP") was the name of the preschool operating on Defendant THS premises prior to Defendant OA. The Administrators/Managers of Defendant MTP also oversaw the Plaintiff's working conditions and environment at all relevant times.

7. At all relevant times, Plaintiff worked as a janitor for Defendant THS, Defendant MTP, and Defendant OA, and are all properly considered a joint, integrated, and/or single employer for the purposes of this action.

8. Defendant Rabbi Randi Musnitsky (herein "Defendant Rabbi M" where referred to individually), is not only the spiritual leader of Defendant THS, but also exerts influence over all aspects of the running of the day to day operations of THS, including but not limited to oversight of employees, the power to hire, fire, discipline, and/or to effectively recommend hiring, firing and discipline; to set and modify the wages of all employees, dealing with employee work grievances, and the power to effectively recommend other working conditions of Defendants.

9. Defendant Josh Greenbaum (herein "Defendant JG" where referred to individually), is the Business Director of Defendant THS and the Director of Defendant OA. As the Business

Director of both the Temple and as Director of the Preschool, Defendant JG was at all relevant times responsible for the oversight of Plaintiff's work and his working conditions.

10. Defendant Alex Hermes (herein "Defendant AH" where referred to individually) is and was at all relevant times a janitorial and/or non-exempt employee for both Defendant THS and The Orchard Academy at Mountain Top Preschool (herein "Defendant OA" where referred to individually).

11. Defendant Jonathan Wishnia (herein "Defendant JW" where referred to individually) is a Board Member and current President of Defendant THS and is responsible for day-to-day running of the organization, including personnel decisions, and was directly involved in the termination of Plaintiff.

12. Defendants Gregg Paradise, Defendant Denise Adelman, Defendant Alexis Soled, Defendant Stephanie Green, Defendant Eric Mandelbaum, Defendant Rob Cohen, Defendant Karen Ehrenberg, along with the aforementioned Defendant JW, (hereinafter referred to as the "Executive Board Defendants") are all on the Executive Board of Temple Har Shalom. It is specifically stated on the website of Defendant THS that "The Executive Board is responsible for the day-to-day running of the organization (including personnel decisions)." As such, the Executive Board is responsible for violations of the Federal and State employment laws that are the subject of this litigation.

13. Defendant Mark Ruderman (herein "Defendant MR" where referred to individually) is an Attorney licensed to practice law in the State of New Jersey, and at all relevant times serves and/or served on the Board of THS, and is a partner at Ruderman & Roth, LLC, representing Defendant THS.

14. Defendants John Does #1-20 are yet unidentified Defendants who are responsible for overseeing issues related to the payroll and/or employment conditions at THS, and who are violating Federal and State employment laws that are the subject of this litigation.

## FACTUAL BACKGROUND

15. Plaintiff is of Costa Rican National Origin, Hispanic Race, and is Jewish.

16. Plaintiff and his family were regarded as members of the Defendant THS since approximately the mid-1990's. In fact, Plaintiff had his Bar Mitzvah, and his children attended religious school at Defendant THS.

17. Plaintiff was employed by Defendants THS, Defendant OA and Defendant MTP, for over 26 years as a full time Janitor, beginning in 1994 until September 16, 2020.

18. Plaintiff's work duties consisted of him performing the following functions on a daily/weekly basis:

   (a)    maintaining the cleanliness of aforementioned Defendant's premises;

   (b)    maintaining the Sanctuary;

   (c)    maintaining the Preschool and Religious School;

   (d)    maintaining the Multi-purpose room, including the setting up and breaking down the various activities that the room was used for;

   (e)    cleaning all the hallways, bathrooms and classrooms;

   (f)    emptying all trash cans and bringing garbage to the dumpsters;

   (g)    assisting in directing traffic in the parking lot for the preschool, religious school, and during Temple functions and services;

   (h)    performing light construction and repair work;

   (i)    shoveling snow and apply salt during the winter months;

(j)     responding to assist the Warren Police Department in shutting off the alarm (which went off frequently during the night)

(k)     any and all other janitorial related services.

19. Based on these work responsibilities, Plaintiff has at all times been a "Non-Exempt from Overtime" employee.

20. For at least the last six (6) years, but in actuality for the past 20 years, Plaintiff's hours at THS were from 7:30 am until roughly 6:30 or 7:00 pm (depending on the cleanliness of the building at days end) on Wednesdays and Thursdays, 1:00 pm through 12:00 midnight on Fridays, 8:00 am through 8:00 pm on Saturdays if there were no Bar/Bat Mitzvahs, and until roughly 1 am if there were Bar/Bat Mitzvahs, especially when evening Bar/Bat Mitzvahs were scheduled, and 7:00 am through 4:00 pm on Sundays.

21. All work days had a 30-minute lunch break.  Plaintiff's days off were Monday and Tuesday.

22. THS has never requested or enforced that Plaintiff utilize a time clock or other time keeping system during his working hours.

23. Plaintiff was required to be at THS at all times during his working hours, unless instructed by his supervisors to pick up supplies or other miscellaneous errands.

24. For at least the past six (6) years (excluding his salary reduction as discussed, *infra*.), Plaintiff was paid a flat salary of $2254.16 on a bi-monthly basis, which equates to approximately $54,099.84 per year.

25. Although Plaintiff regularly worked anywhere from 51.5 to 57.5 hours per week, Defendants never paid him overtime premiums for all hours worked in excess of forty (40) hours in a work week.

26. Prior to the hiring of Defendant JG, Plaintiff was supervised and instructed by Defendant Rabbi M., Defendant KE, Defendant JW, Defendant GP, the Temple Cantor, as well as whomever was the Temple Administrator and/or secretary at the time.

27. During the course of Plaintiff's 26-year employment he never received any verbal or written warning letters, or negative assessments of his work.

28. On or about June of 2019, Defendant JG was hired as the Business Director/Temple Administrator of Defendant THS, and as the Executive Director of Defendant OA.

29. At that time, Defendant JG hired much of the staff from the previous preschool that he directed, including Defendant AH, who also performed work as a janitorial/maintenance employee.

30. Defendant AH is approximately 15 years younger than Plaintiff and is Caucasian.

31. On or around June 2019, Defendants AH, JG, on behalf of THS, set upon a course of conduct of harassment and intimidation towards Plaintiff.

32. Plaintiff was repeatedly called a "fucking joke", "lazy", and was bad mouthed to the teachers and other staff at the preschool by AH and JG.

33. Defendant AH continually told Plaintiff that he was not a Jew and no one at Defendant THS (Congregants and other staff members) considered him a Jew.

34. On a frequent basis, when Plaintiff came into contact with Defendant AH, Defendant AH would point his finger and say "Mexico is that way" and say that Plaintiff was a "Mexican." When Plaintiff would say that he was from Costa Rica, AH would constantly reply "same shit."

35. Defendant AH continually told Plaintiff that he was "too fucking old" to do his job duties. Other times Defendant AH would say to Plaintiff that "you have been here too fucking

long." Defendant AH would tell Plaintiff that he should only mop and clean toilets because he was too old to lift tables and other items within THS.

36. At other times when Plaintiff looked for Defendant AH to assist in projects, Plaintiff would find out that Defendant AH had told the preschool staff and Defendant JG that he was out for the day or a few days. Defendant JG would never bother to tell Plaintiff that Defendant AH would not be available for those days, and Plaintiff would rush to take over the additional responsibilities of Defendant AH that were to be done for the day. Plaintiff asked Defendant JG to let him know ahead of time if Defendant AH told Defendant JG that he would not be at work. Notwithstanding, Defendant JG ignored this request from Plaintiff.

37. Defendant AH placed boxes and other items on top of Plaintiff's desk in the Mechanical Room to prevent Plaintiff from doing his work, dumped debris and other construction waste on Plaintiff's desk without out cleaning it up, and placed dust and debris on Plaintiff's tools and in his work area.  Plaintiff was then instructed by Defendant JG to clean up these areas, despite the fact that these actions were undertaken by Defendant AH to demean and harass Plaintiff.

38. There were a number of times that Plaintiff had to tell his supervisor, Defendant JG, that Defendant AH smelled of alcohol, had red/glassy eyes, and appeared hung over during working hours.

39. At first, Defendant JG told Plaintiff that he (JG) knew that AH had some personal problems, such as issues with alcohol, but after a number of complaints, Plaintiff was ultimately told by Defendant JG that he needed to "mind your own business."

40. In approximately July of 2019, Plaintiff had to take time off from work after an injury while painting the elevator area. Plaintiff provided doctor's notes to his immediate supervisor, Defendant JG, requesting that Plaintiff be given light duty work. Despite the doctor's notes,

Plaintiff was given 2-3 days to recuperate, and then went back to work without a reasonable accommodation.

41. The frequent harassment and intimidation of Plaintiff resulted in an exchange of texts on or about August 28, 2019, between Plaintiff and Defendant AH, wherein Defendant AH advised Plaintiff that he was taking over the Pre-School "Drop Off" of the students in the morning (even though he had no authority to do so), and threatened Plaintiff with physical harm, telling Plaintiff to "start lifting weights" if Plaintiff wanted to fight Defendant AH about this change.

42. Plaintiff forwarded these texts to Defendant JG that same day, who instructed Plaintiff to "ignore the messages obviously."

43. After this exchange of texts from Defendant AH to Plaintiff, Plaintiff met with Defendant Rabbi M. and showed her the texts, and verbally complained about the "fighting" texts to Defendant Rabbi M.

44. Plaintiff also around this same time showed the texts of Defendant AH to Defendant Board Member KE, and asked her to look into the matter.

45. Upon information and belief, neither Defendants JG, Defendant KE, nor Defendant Rabbi M took any disciplinary action towards Defendant AH regarding these complaints, as the inappropriate conduct of Defendant AH continued.

46. After the exchange of texts between Plaintiff and Defendant AH, Defendant AH would repeatedly punch his hands whenever he saw Plaintiff, symbolizing that he wanted to fight Plaintiff.  These actions by Defendant AH continued for the duration Plaintiffs employment.

47. Plaintiff thereafter again complained about the "hand punching" actions of Defendant AH to both Defendant Rabbi M, Defendant JG and Defendant JW.  In fact, Plaintiff complained

to Defendant JW almost every Sunday when he would see Defendant JW, after Defendant JW would enter THS after dropping his children off for Sunday School.

48. Defendant Rabbi M, Defendant JG and Defendant JW once again ignored the complaints of Plaintiff, and took no further actions against Defendant AH.

49. Plaintiff went so far as telling both Defendant JG, Defendant JW and Defendant Rabbi M, that he was fearful of harm from Defendant AH, and was contemplating going to the police over the matter.

50. Defendant JG advised Plaintiff not to get the police involved, that Defendant Rabbi M. and Defendant JG were aware of the problems, and would be handling it internally. Separately, both Defendant Rabbi M and Defendant JW told Plaintiff that Defendant JG would "handle it."

51. Despite these assurances, Defendant AH's conduct towards Plaintiff did not change.

52. During the first week of the new school year in 2019, Plaintiff observed Defendant AH walking through the hallways of the school when children were present with bulky/hazardous items (such as ladders, tables and chairs), barely missing the children with these items.

53. Plaintiff complained about these actions (which he knew were dangerous to the children and which he never did when he was the janitor in the preschool area) to both Defendant JG and Defendant Rabbi M.

54. On or about the third week of September of 2019, Defendant JG called Plaintiff into a meeting in his office.

55. When Plaintiff arrived, Defendant JG was in his office with Defendant AH. Defendant JG advised Plaintiff that he was further reducing Plaintiff's prior responsibilities, by instructing him that the janitorial/maintenance duties for the school portion of the building would

thereafter be usurped by Defendant AH exclusively, and relegating Plaintiff to only handling the janitorial/maintenance work related to the Sanctuary/Multipurpose Room, and the Social Hall.

56. These actions in diminishing Plaintiffs job duties were a direct result of Plaintiff complaining about the texts from Defendant AH, the actions of Defendant AH in punching his hands on a repeated basis, as well as the other conduct of Defendant AH as described herein, to Defendant Rabbi M, Defendant JW and Defendant JG.

57. On or about February of 2020, Plaintiff needed the assistance of Defendant AH on a particularly busy cleaning day at THS.  Defendant AH advised Plaintiff that he (AH) could not assist Plaintiff, as he was performing personal work on the home of Defendant JG during working hours, while on the payroll for Defendant THS, and that Plaintiff "could not do shit about it."

58. Upon Plaintiff complaining to Defendant JG on this same day about this, Plaintiff was again told to "mind his own business."

59. On February 3, 2020 Plaintiff had to have an epidural injection due to continuing pain from his prior injury that occurred in June of 2019 (Paragraph 40 above).

60. Plaintiff again provided a doctor's note to Defendant JG, excusing him from work through February 18, 2020. Despite Plaintiff providing this note to Defendant JG, Defendant JG required Plaintiff to return to work after 2-3 days, and perform his regular work duties without an accommodation. At this same meeting, Defendant JG advised Plaintiff that unless he signed a waiver to perform this work, Defendant THS would find someone else to take Plaintiff's job.

61. Because he was fearful for his job, Plaintiff signed the Waiver.

62. On or about the last week of May 2020, Plaintiff was told by the Defendant JW that he would no longer be part of the maintenance staff effective June 30, 2020, and that Plaintiff was only allowed to be an usher for Bar and Bat Mitzvahs. Additionally, Defendant JW told Plaintiff that as of June 30th, Plaintiff's salary was to be cut by twenty thousand dollars ($20,000.00) per year.

63. In mid-June 2020, Defendant JG told Plaintiff that he was "no longer wanted at THS", and told Plaintiff "he was not to appear" at THS unless he was required as an usher for a Bar or Bat Mitzvah. There was one Bar Mitzvah on June 18, 2020, and none after that until September of 2020, discussed *infra*.

64. In August 2020, Plaintiff used 4 weeks of accrued vacation to travel to his native Costa Rica.

65. Upon his return to New Jersey from Costa Rica on August 28, 2020, Plaintiff quarantined for the mandatory 2-week period per CDC requirements.

66. While Plaintiff was under quarantine, Defendant JG called Plaintiff to ask about floor buffers that Plaintiff borrowed earlier in the summer.

67. For approximately the last 20 years of his employment, Plaintiff was allowed personal use the floor buffing machines and other Defendant THS equipment by prior Defendant THS Administrators and Rabbi's, and was never subsequently advised to cease this practice.

68. These floor buffers were not returned immediately by Plaintiff after they were used because Plaintiff knew that Defendant THS was shut down due to COVID, and the buffers were not needed by Defendant THS.

69. Defendant JG told Plaintiff that Defendant JW wanted the floor buffers returned to the Temple. Plaintiff told Defendant JG that he still had them, to which Defendant JG replied "you just got caught stealing."

70. Since Defendant JG did not want Plaintiff on the property of Defendant THS unless there was a B'nai Mitzvah, Plaintiff had a friend, "Sante Brown," return the buffers, as well as various cleaning products and some previously discarded orange traffic cones, to Defendant THS.

71. After the period of quarantine was over, Defendant JG told Plaintiff that "we don't want you back" and to remain under quarantine for an additional one (1) week period.

72. On September 16, 2020, Plaintiff was summoned to a meeting at Defendant THS by Defendant JG and Defendant JW, and was falsely accused of stealing Defendant THS property by Defendants JG and Defendant JW. At the conclusion of the meeting, Plaintiff was unlawfully terminated from his employment.

73. The items Plaintiff was accused of stealing at the aforementioned meeting were the two (2) floor buffing machines, some discontinued cleaning products, and 4 traffic cones, all of which had previously been returned by "Sante Brown." Plaintiff had been instructed some time prior to his August vacation to throw out the cleaning products because the Cantor of Defendant THS did not like the way they cleaned, and left a greasy residue on the pews. Plaintiff was also previously instructed by Defendant JG to dispose of the traffic cones, which were in bad condition. During the Termination Meeting on September 16, 2020, Plaintiff was provided a Settlement Agreement, which contained a General Release, Non-Disclosure and Non-Disparagement clauses.

74. Plaintiff was told by Defendant JW (a New Jersey and New York practicing Attorney) and Defendant JG that he would receive $4500.00 after signing the Agreement.

75. Upon information and belief, Defendant JW drafted the Separation Agreement in his capacity as an attorney and utilizing the computer files from his firm, Lowenstein Sandler, LLP.

76. Plaintiff was additionally threatened by Defendant JW at this September 16, 2020, meeting that if he did not sign the Separation Agreement, Defendant THS would file a criminal complaint against Plaintiff for the alleged theft of the buffers and cleaning supplies.

77. During this meeting, Plaintiff was never afforded the opportunity to explain why the items were in his possession.

78. Plaintiff never signed the Separation Agreement.

79. The threat of proceeding against Plaintiff criminally if he did not sign the Separation Agreement was repeated a second time during a telephone call by Defendant MR (a New Jersey and New York practicing Attorney) on October 26, 2020, to attorney, Steven B. Horowitz, Esq., on speakerphone and in the presence of Rae T. Horowitz, Esq. and Plaintiff.  Defendant MR had previousy corresponded to Plaintiff's counsel that he was representing Defendants.

80. During this telephone call, Defendant MR also repeatedly said that, should Plaintiff not sign the Agreement and/or reach an acceptable resolution with Defendant THS, Plaintiff would "not want his name besmirched" by the actions of Defendant THS proceeding with criminal charges against Plaintiff.

81. On or about November 24, 2020, Plaintiff received correspondence from Defendant THS, dated November 16, 2020, and signed by Defendant JW, informing him that he was banned from the premises of Defendant THS notwithstanding that Plaintiff and his family were members of Defendant THS. The letter went on to cite NJSA Section 2C:18-3, reiterating the threat of criminal prosecution.

82. Plaintiff filed an Initial Charge of Discrimination at the EEOC based on the factual allegations as stated herein on or about November 4, 2020, Charge Number 524-2021-00165.

83. Plaintiff amended his Charge on or about November 17, 2020, which alleges all of the allegations as contained herein, as well as all of the named Defendants.

84. Plaintiff requested, and subsequently received a "Right to Sue" letter from the EEOC on or about December 16, 2020.

### FIRST CLAIM FOR RELIEF

### (Failure to Pay Overtime Wages - FLSA)

### Against Defendant THS, Defendant OA, Defendant MTS, Defendant Rabbi M, Defendant JG, Defendant JW, Defendants "The Executive Board", Defendant MR and John Does

85. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

86. At all relevant times hereto, Plaintiff was an employee of Defendants THS, Defendant MTP and Defendant OA within the meaning of the FLSA, 29 U.S.C. §§ 2601, *et. seq.*

87. At all relevant times hereto, Plaintiff regularly worked in excess of forty (40) hours per workweek.

88. On a weekly basis, Plaintiff regularly worked between 51.5 and 57.5 hours per week, to which he received no overtime compensation.

89. Defendant THS has an Executive Board (including a Past President, Defendant MR, Esq., who is an experienced Labor and Employment Law attorney) that consisted of some individual(s) who are Attorney's, who knew or should have known about the failure of Defendant THS to pay Plaintiff for his overtime hours.

90. Defendants THS, Defendant MTP, Defendant OA, Defendant Rabbi M., Defendant JG, Defendant JW, Defendant GP, Defendant DA, Defendant AS, Defendant SG, Defendant EM, Defendant RC, and Defendant KE (Defendant KE also individually based on her duties as bookkeeper of THS), are decision makers of all employment and payroll related

issues, and failed to pay Plaintiff lawful overtime compensation for all of the hours he worked in excess of forty (40) hours in each workweek in violation of the FLSA.

91. Plaintiff seeks damages in the amount of his respective unpaid overtime wages, liquidated damages as provided by the FLSA for overtime violations, attorney's fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

### (Failure to Pay Overtime Wages-New Jersey Wage Theft Act, The New Jersey Wage Payment Law (NJWPL) (N.J.S.A. 34:11-4.1, et seq.), and The New Jersey Wage and Hour Law (NJWHL) (N.J.S.A. 34:11-56a, et seq.)

### -Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, MR and John Does-

92. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

93. At all relevant times hereto, Plaintiff was an employee of Defendants THS, Defendant MTP and Defendant OA within the meaning of the New Jersey Wage Theft Act, The New Jersey Wage Payment Law (NJWPL) (N.J.S.A. 34:11-4.1, et seq.), and New Jersey Wage and Hour Law (NJWHL) (N.J.S.A. 34:11-56a *et. seq.*).

94. At all relevant times hereto, Plaintiff regularly worked in excess of forty (40) hours per workweek.

95. On a weekly basis, Plaintiff regularly worked between 51.5 and 57.5 hours per week, to which he received no overtime compensation.

96. Defendant THS has had an Executive Board and a Past President (including Defendant Mark Ruderman, Esq.) that consisted of individual(s) who is/are experienced Labor and Employment Law attorneys, or general business attorneys, who knew or should have known about the failure of THS to pay Plaintiff for his overtime hours.

97. Defendants THS, Defendant MTP, Defendant OA, Defendant Rabbi M., Defendant JG, Defendant JW, Defendant GP, Defendant DA, Defendant AS, Defendant SG, Defendant EM, Defendant RC, and Defendant KE (Defendant KE individually based on her duties as bookkeeper of THS), are decision makers of all payroll related issues, failed to pay Plaintiff lawful overtime compensation for all of the hours he worked in excess of forty (40) hours in each workweek pursuant to the New Jersey State Wage and Hour Law, N.J.S.A. § 34:11-56(a) *et.* seq.

98. Plaintiff seeks damages in the amount of his unpaid overtime, plus 200% of the amount of his respective unpaid overtime wages as liquidated damages as provided by the New Jersey State Wage and Hour Law for overtime violations, attorney's fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**THIRD CLAIM FOR RELIEF**

**(Violations of the Conscientious Employee Protection Act "CEPA")**

**-Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, MR and John Does-**

99. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

100. There were a number of times that Plaintiff had to tell his supervisor, Defendant JG, that Defendant AH smelled of alcohol, and was apparently drunk on school property during working hours and around children. Plaintiff was told by Defendant JG to "mind your own business".

101. Plaintiff was subject to harassment, intimidation, retaliation and subsequent termination for reporting to Defendant JG that Defendant AH was doing personal work at the home of Defendant JG while on the payroll for Defendant THS.

102. These actions constitute violations of the CEPA.

103.    Plaintiff seeks damages for the reduction in compensation, the hostile work environment, harassment, retaliation and the termination of employment all of which were the direct and proximate result of his complaints of illegality in the workplace.

### FOURTH CLAIM FOR RELIEF

### (Section 1981 of the Civil Rights Act of 1866 ("Section 1981- 42 U.S.C. § 1981)

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-

104.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

105.    Plaintiff is of Hispanic National Origin, and an employee of Defendant THS for 26 years.  Plaintiff is therefore a member of a protected class as defined under Section 1981 of the Civil Rights Act of 1866 ("Section 1981- 42 U.S.C. § 1981).

106.    At no time did Plaintiff ever receive any verbal or written warning letters or negative assessments of his work.

107.    At the time Defendant JG became the business director of THS, he hired a Caucasian janitorial employee from his previous business, AH.

108.    Shortly after, Defendant JG and AH, set upon a course of conduct of harassment and intimidation towards Plaintiff.

109.    Plaintiff was called lazy and a "fucking joke", he was bad mouthed to the teachers in the preschool, his wages and job duties were significantly reduced, and Plaintiff was repeatedly threatened with physical harm.

110.    Plaintiff was repeatedly told that "Mexico is that way" by Defendant AH.

111.    Plaintiff reported these actions to his superiors, including but not limited to, Rabbi M., JG, JW, and KE, who undertook no actions to intervene or stop the harassment.

112.     Plaintiff was terminated when false charges of theft were alleged by Defendants JG and JW.

113.     Plaintiff claims that Defendants violated Section 1981 of the Civil Rights Act of 1866 ("Section 1981- 42 U.S.C. § 1981), by treating him in a less favorable manner because he is Hispanic.

114.     Defendants subjected Plaintiff to less favorable treatment and more severe discipline than non-Hispanic employees on the basis of his National Origin, including termination for alleged misconduct and false allegations.

115.     Defendants allegations of theft of THS property are false, as Plaintiff was directly permitted to use the equipment, and any such allegations are a pretext for the unlawful discrimination by Defendants.

116.     Defendants actions were motivated by actual malice and/or was the result of a willful and wanton disregard for the harm to Plaintiff.

117.     Defendants actions caused Plaintiff to suffer economic, physical and emotional harm.

118.     Plaintiff seeks relief herein for adverse actions including: the harassment and intimidation, the reduction in wages, and the termination from his employment. All these actions by Defendants were the direct and proximate result of discrimination.


**FIFTH CLAIM FOR RELIEF**

**(Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq (1964))**

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-**

119.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

120.     Plaintiff was a Hispanic/Costa Rican and Jewish employee of Defendant THS for 26 years.

121.     As such, Plaintiff is a member of a protected class as defined by Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq (1964)).

122.     Plaintiff claims that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq (1964), by treating him in a less favorable manner because of his National Origin (Costa Rican), Race (Hispanic) and Religion (Jewish).

123.     Defendants subjected Plaintiff to less favorable treatment and more severe discipline than non-Hispanic employees on the basis of his National Origin, Race and Religion, including termination for alleged misconduct and false allegations.

124.     Defendant's actions were motivated by actual malice and/or was the result of a willful and wanton disregard for the harm to Plaintiff, based on his National Origin, Race and Religion.

125.     Defendant's allegations of theft of THS property are false, as Plaintiff was directly permitted to use the equipment, and any such allegations are a pretext for the unlawful discrimination by Defendants.

126.     Defendant's actions caused Plaintiff to suffer economic, physical and emotional harm.

127.     Plaintiff seeks relief herein for the adverse actions taken against him, including but not limited to his reduction in wages, and the termination from his employment.

128.     All the actions by Defendants were the direct and proximate result of discrimination.

## SIXTH CLAIM FOR RELIEF

### (Age Discrimination in Employment Act of 1967 ("ADEA" 29 U.S.C. 621 §§ *et. seq.*))

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-

129.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

130.     Plaintiff was a 60 year old employee of Defendant THS for 26 years.

131.     As such, Plaintiff is a member of a protected class as defined by the Age Discrimination in Employment Act of 1967 ("ADEA" 29 U.S.C. 621 §§ *et. seq.*).

132.     Plaintiff claims that Defendants violated the Age Discrimination in Employment Act of 1967 ("ADEA" 29 U.S.C. 621 §§ *et. seq.*), by treating him in a less favorable manner because of his age.

133.     Defendants subjected Plaintiff to less favorable treatment and more severe discipline than younger employees on the basis of his Age, including his termination for alleged misconduct and false allegations.

134.     Defendant's actions were motivated by actual malice and/or was the result of a willful and wanton disregard for the harm to Plaintiff, based on his Age.

135.     Defendant's allegations of theft of THS property are false, as Plaintiff was directly permitted to use the equipment, and any such allegations are a pretext for the unlawful discrimination by Defendants.

136.     Defendant's actions caused Plaintiff to suffer economic, physical and emotional harm.

137.     Plaintiff seeks relief herein for the adverse actions taken against him, including but not limited to his reduction in wages, and the termination from his employment.

138.    All the actions by Defendants were the direct and proximate result of discrimination.

## SEVENTH CLAIM FOR RELIEF

### (Americans with Disabilities Act of 1990 ("ADA" 42 U.S.C. § 12101 *et. seq.*))

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-

139.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

140.    In approximately July of 2019, Plaintiff had to take time off from work after an injury while painting the elevator area. Plaintiff provided doctor's notes to his immediate supervisor, Defendant JG, requesting that Plaintiff be given light duty work. Despite the doctor's notes, Plaintiff was given 2-3 days to recuperate, and then went back to work without a reasonable accommodation.

141.    On February 3, 2020 Plaintiff had to have an epidural injection due to continuing pain from his prior injury that occurred in June of 2019 (Paragraph 40 above).

142.    Plaintiff again provided a doctor's note to Defendant JG, excusing him from work through February 18, 2020. Despite Plaintiff providing this note to Defendant JG, Defendant JG required Plaintiff to return to work after 2-3 days, and perform his regular work duties without an accommodation.

143.    As such, Plaintiff is a member of a protected class as defined by the Americans with Disabilities Act of 1990 ("ADA" 42 U.S.C. § 12101 *et. seq.*).

144.    Plaintiff claims that Defendants violated the Americans with Disabilities Act, by treating him in a less favorable manner because of his disability.

145.     Defendants subjected Plaintiff to less favorable treatment and more severe discipline than employees with no disability, including his termination for alleged misconduct and false allegations.

146.     Defendants actions were motivated by actual malice and/or was the result of a willful and wanton disregard for the harm to Plaintiff, based on his disability.

147.     Defendants allegations of theft of THS property are false, as Plaintiff was directly permitted to use the equipment, and any such allegations are a pretext for the unlawful discrimination by Defendants.

148.     Defendants actions caused Plaintiff to suffer economic, physical and emotional harm.

149.     Plaintiff seeks relief herein for the adverse actions taken against him, including but not limited to his reduction in wages, and the termination from his employment.

150.     All the actions by Defendants were the direct and proximate result of discrimination.


**EIGHTH CLAIM FOR RELIEF**

**(New Jersey Law Against Discrimination Disparate Treatment ("NJLAD" NJ Rev Stat §**

**10:5-12 (2016)** *et. seq.***))**

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John**

**Does-**

151.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

152.     Plaintiff was a Hispanic/Costa Rican and Jewish employee of Defendant THS for 26 years.

153.     As such, Plaintiff is a member of a protected class as defined by the New Jersey Law Against Discrimination ("NJLAD" NJ Rev Stat § 10:5-12 (2016) *et. seq.*)).

154.     Plaintiff claims that Defendants violated the New Jersey Law Against Discrimination ("NJLAD" NJ Rev Stat § 10:5-12 (2016) *et. seq.*)), by treating him in a less favorable and disparate manner because of his National Origin (Costa Rican), Race (Hispanic), Religion (Jewish), and Disability.

155.     Defendants subjected Plaintiff to less favorable treatment and more severe discipline than non-Hispanic employees on the basis of his National Origin, Race, Religion, and Disability, including termination for alleged misconduct and false allegations.

156.     Defendants actions were motivated by actual malice and/or was the result of a willful and wanton disregard for the harm to Plaintiff, based on his National Origin, Race, Religion, and Disability.

157.     Defendants allegations of theft of THS property are false, as Plaintiff was directly permitted to use the equipment, and any such allegations are a pretext for the unlawful discrimination by Defendants.

158.     Defendants actions caused Plaintiff to suffer economic, physical and emotional harm.

159.     Plaintiff seeks relief herein for the adverse actions taken against him, including but not limited to his reduction in wages, and the termination from his employment.

160.     All the actions by Defendants were the direct and proximate result of discrimination.

## NINTH CLAIM FOR RELIEF

## (New Jersey Law Against Discrimination Hostile Work Environment ("NJLAD" NJ Rev Stat § 10:5-12 (2016) *et. seq.*))

24

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-**

161.　　The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

162.　　Plaintiff was a Hispanic/Costa Rican and Jewish employee of Defendant THS for 26 years.

163.　　As such, Plaintiff is a member of a protected class as defined by the New Jersey Law Against Discrimination ("NJLAD" NJ Rev Stat § 10:5-12 (2016) *et. seq.*)).

164.　　Plaintiff claims that Defendants violated the New Jersey Law Against Discrimination ("NJLAD" NJ Rev Stat § 10:5-12 (2016) *et. seq.*)), by creating a Hostile Work Environment because of his National Origin (Costa Rican), Race (Hispanic),Religion (Jewish), and Disability.

165.　　Defendants subjected Plaintiff to less favorable treatment and more severe discipline than non-Hispanic employees on the basis of his National Origin, Race, Religion, and Disability, including termination for alleged misconduct and false allegations.

166.　　Plaintiff was repeatedly called a "fucking joke", "lazy", and was bad mouthed to the teachers and other staff at the preschool by AH and JG.

167.　　Defendant AH continually told Plaintiff that he was not a Jew and no one at Defendant THS (Congregants and other staff members) considered him a Jew.

168.　　On a frequent basis, when Plaintiff came into contact with Defendant AH, Defendant AH would point his finger and say "Mexico is that way" and say that Plaintiff was a "Mexican."  When Plaintiff would say that he was from Costa Rica, AH would constantly reply "same shit."

169.     Defendant AH continually told Plaintiff that he was "too fucking old" to do his job

duties. Other times Defendant AH would say to Plaintiff that "you have been here too

fucking long." Defendant AH would tell Plaintiff that he should only mop and clean toilets

because he was too old to lift tables and other items within THS.

170.     Defendant AH threatened Plaintiff with physical harm, telling Plaintiff to "start

lifting weights" if Plaintiff wanted to fight Defendant AH about this change, and AH would

repeatedly punch his hands around Plaintiff, indicating that he wanted to fight him.

171.     Defendants harassment of Plaintiff was severe and pervasive enough to make a

reasonable person of Plaintiff's National Origin, Race, Religion and Disability feel that his

employment was altered and that the working environment was intimidating, hostile and

abusive on the basis of his protected class.

172.     Defendants actions were motivated by actual malice and/or was the result of a

willful and wanton disregard for the harm to Plaintiff, based on his National Origin, Race,

Religion, and Disability.

173.     Defendants allegations of theft of THS property are false, as Plaintiff was directly

permitted to use the equipment, and any such allegations are a pretext for the unlawful

discrimination by Defendants.

174.     Defendants actions caused Plaintiff to suffer economic, physical and emotional

harm.

175.     Plaintiff seeks relief herein for the adverse actions taken against him, including but

not limited to his reduction in wages, and the termination from his employment.

176.     All the actions by Defendants were the direct and proximate result of discrimination.

**TENTH CLAIM FOR RELIEF**

**(Section 1981 of the Civil Rights Act of 1866 – Retaliation)**

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-**

177.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

178.     Plaintiff engaged in protected activity under Section 1981 of the Civil Rights Act of 1866, by reporting discrimination and harassment to Defendants.

179.     On multiple occasions, Plaintiff alerted the Defendants that he had been subject to discriminatory treatment on account of his national origin and/or witnessed more favorable treatment of non-Hispanics.

180.     Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting him to less favorable treatment and more severe discipline than other employees, including termination for conduct which went unpunished for other employees.

181.     Plaintiff was subject to retaliation when he was told by Defendant JW and JG that he would be subject to criminal charges if he did not sign a Separation Agreement and Release.

182.     Plaintiff was subject to further retaliation when he was told, via Marc Ruderman, the attorney for Defendant THS, that THS would proceed with criminal charges and that Plaintiff would have his name besmirched if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

183.     Plaintiff was subject to further retaliation when he was told by Defendant JW was no longer allowed to appear at THS, and would be subject to criminal trespass, even though he was Jewish and considered to be a member of the Temple.

184.     Defendant's actions were motivated by a willful and wanton disregard for the harm to Plaintiff.

185.     Defendants caused Plaintiff to suffer economic, physical and emotional harm.

## ELEVENTH CLAIM FOR RELIEF

### (Title VII of the Civil Rights Act of 1964 – Retaliation)

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-

186.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

187.     Plaintiff engaged in protected activity under Title VII of the Civil Rights Act of 1964, by reporting discrimination and harassment to Defendants.

188.     On multiple occasions, Plaintiff alerted the Defendants that he had been subject to discriminatory treatment on account of his national origin, race, religion, and/or witnessed more favorable treatment of non-Hispanics.

189.     Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting him to less favorable treatment and more severe discipline than other employees, including termination for conduct which went unpunished for other employees.

190.     Plaintiff was subject to retaliation when he was told by Defendant JW that he would be subject to criminal charges if he did not sign a Separation Agreement and Release.

191.     Plaintiff was subject to further retaliation when he was told, via Marc Ruderman, the attorney for Defendant THS, that he would have his name besmirched due to criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

192.     Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that THS would file criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

193.     Plaintiff was subject to retaliation when he was told by Defendant JW was no longer allowed to appear at THS, and would be subject to criminal trespass, even though he was Jewish and considered to be a member of the Temple.

194.     Defendant's actions were motivated by a willful and wanton disregard for the harm to Plaintiff.

195.     Defendants caused Plaintiff to suffer economic, physical and emotional harm.


**TWELFTH CLAIM FOR RELIEF**

**(Age Discrimination in Employment Act of 1967 – Retaliation)**

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-**

196.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

197.     Plaintiff engaged in protected activity under the Age Discrimination in Employment Act of 1967, by reporting discrimination and harassment to Defendants.

198.     On multiple occasions, Plaintiff alerted the Defendants that he had been subject to discriminatory treatment on account of his age and/or more favorable treatment of younger employees.

199.     Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting him to less favorable treatment and more severe discipline than other employees, including termination for conduct which went unpunished for other employees.

200.     Plaintiff was subject to retaliation when he was told by Defendant JW that he would be subject to criminal charges if he did not sign a Separation Agreement and Release.

201.     Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that THS would file criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

202.     Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that he would have his name besmirched due to criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

203.     Plaintiff was subject to retaliation when he was told by Defendant JW was no longer allowed to appear at THS, and would be subject to criminal trespass, even though he was Jewish and considered to be a member of the Temple.

204.     Defendant's actions were motivated by a willful and wanton disregard for the harm to Plaintiff.

205.     Defendants caused Plaintiff to suffer economic, physical and emotional harm.


## THIRTEENTH CLAIM FOR RELIEF

### (Americans with Disabilities Act of 1990 – Retaliation)

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John Does-

206.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

207.     Plaintiff engaged in protected activity under the Americans with Disabilities Act of 1990, by reporting discrimination and harassment to Defendants.

208.     On multiple occasions, Plaintiff alerted the Defendants that he had been subject to discriminatory treatment on account of his disability and/or more favorable treatment of non-disabled employees.

209.     Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting him to less favorable treatment and more severe discipline than other employees, including termination for conduct which went unpunished for other employees.

210.     Plaintiff was subject to retaliation when he was told by Defendant JW that he would be subject to criminal charges if he did not sign a Separation Agreement and Release.

211.     Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that THS would file criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

212.     Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that he would have his name besmirched due to criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

213.     Plaintiff was subject to retaliation when he was told by Defendant JW was no longer allowed to appear at THS, and would be subject to criminal trespass, even though he was Jewish and considered to be a member of the Temple.

214.     Defendant's actions were motivated by a willful and wanton disregard for the harm to Plaintiff.

215.     Defendants caused Plaintiff to suffer economic, physical and emotional harm.

## FOURTEENTH CLAIM FOR RELIEF

**(New Jersey Law Against Discrimination (NJLAD) – Retaliation)**

**- Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, AH and John**

**Does-**

216.　　The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

217.　　Plaintiff engaged in protected activity under the New Jersey Law Against Discrimination (NJLAD), by reporting discrimination and harassment to Defendants.

218.　　On multiple occasions, Plaintiff alerted the Defendants that he had been subject to discriminatory treatment on account of his national origin, race, religion, age, disability and/or more favorable treatment of other employees.

219.　　Defendants retaliated against Plaintiff for engaging in protected activity, by subjecting him to less favorable treatment and more severe discipline than other employees, including termination for conduct which went unpunished for other employees.

220.　　Plaintiff was subject to retaliation when he was told by Defendant JW that he would be subject to criminal charges if he did not sign a Separation Agreement and Release.

221.　　Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that THS would file criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

222.　　Plaintiff was subject to further retaliation when he was told, via the attorney for Defendant THS, Mark Ruderman, that he would have his name besmirched due to criminal charges if he did not sign the Separation Agreement and Release, and take the offer of $4500.00.

223.    Plaintiff was subject to retaliation when he was told by Defendant JW was no longer allowed to appear at THS, and would be subject to criminal trespass, even though he was Jewish and considered to be a member of the Temple.

224.    Defendant's actions were motivated by a willful and wanton disregard for the harm to Plaintiff.

225.    Defendants caused Plaintiff to suffer economic, physical and emotional harm.


### FIFTEENTH CLAIM FOR RELIEF

### (Civil Damages for Fraudulent Filing of Information Returns, 26 U.S.C. §7434(a))

### - Against THS, OA, MTS, Rabbi M, JG, JW, The Executive Board, KE, MR, and John Does-

226.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

227.    By its failure to pay Plaintiff the proper Overtime for all tax years during which he was employed by THS, by its subsequent submission of inaccurate pay stubs and W-2's to Plaintiff, and by its failure to properly record, account for and report to the Internal Revenue Service all moneys which were owed to Plaintiff, Defendants have willfully filed a fraudulent Information Return with respect to payments of wages to Plaintiff.

228.    Such actions violate 26 U.S.C. §7434(a), as the improper reporting of income tax withheld to an employee.

229.    Under the Internal Revenue Code, "if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

230.     By such inappropriate payments, Plaintiff is entitled to an amount equal to the greater of $5000 or the sum of any actual damages, costs of the action, and reasonable attorney fees.

231.     Concurrent with the filing of this action, Plaintiff has provided a copy of this Complaint to the Internal Revenue Service per 26 U.S.C. §7434(e).

**WHEREFORE,** Plaintiff demands judgment against the Defendants and seeks damages for the above claims in the following manner:

A. For the FLSA and NJWHL claims, for a (i) Declaratory Judgment that the practices complained of herein are unlawful under the FKSA and the NJWHL; (ii) An award of unpaid overtime compensation, according to proof, including FLSA Liquidated damages, to be paid by Defendants; (iii) An award of damages to Plaintiff for violations of the NJHWHL (including, but not limited to 200% liquidated damages); (iv) an award of pre-judgment and post-judgment interest, (v) reasonable expert and attorney fees, (vi) an award of damages resulting from additional tax debt and additional time and expenses associated with any necessary tax correction; and (vii) fees and costs pursuant to 29 U.S.C. § 216 and the NJWHL

B. For the remaining claims of Discrimination/Retaliation, (i) back pay; (ii) reinstatement or front pay; (iii) lost benefits; (iv) other compensatory damages; (v) emotional distress damages; (vi) punitive damages; (vii) statutory penalties; (viii) interest; and (ix) compensation for the negative tax consequences of receiving a damage award in the form of a one-time lump sum.

C. All costs and attorney's fees incurred in prosecuting claims in violation of 26 U.S.C. § 7434.

D.  For all claims, an award of attorney fees, costs of suit (including any expert fees), pre- and post-judgment interest as provided by law, and such other relief as this court deems necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff Manuel Morales demands a trial by jury on all issues.

## DESIGNATION OF TRIAL COUNSEL

Steven B. Horowitz, Esq., is hereby designated as trial counsel in this matter.

HOROWITZ LAW GROUP, LLC
Attorneys for Plaintiff

By:  /s/ Steven B. Horowitz
Steven B. Horowitz, Esq.

Dated:  December 24, 2020

## <u>CERTIFICATION PURSUANT TO R. 4:5-1</u>

I HEREBY CERTIFY that, to the best of my knowledge, information and belief, the instant matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding.  I am not presently aware of any other parties who should be joined in this action.

HOROWITZ LAW GROUP, LLC
Attorneys for Plaintiff

By:  ____/s/Steven B. Horowitz_____
Steven B. Horowitz, Esq.

Dated:  December 24, 2020